**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 17-81541-TLS |
| CIRCLE MEDIA, INC. and S3 DIGITAL | ) |
| CORP.,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) **Re: Docket Nos. 9 and 29** |

**FINAL ORDER (I) AUTHORIZING DEBTORS AND
DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING, (II)
AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND
SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY,
AND (VI) GRANTING RELATED RELIEF**

Upon the motion dated October 27, 2017 (the "**Motion**"), seeking entry of an interim

order [Docket No. 29] (the "**Interim Order**") and this final order (this "**Final Order**"), *inter*

*alia*,

(a) authorizing S3 Digital Corp. ("**S3 Digital**") and Circle Media, Inc. ("**Circle Media**," and together with S3 Digital, the "**Debtors**") to obtain secured postpetition superpriority financing (the "**DIP Facility**") on an interim and final basis from Circle Orange LLC (collectively with its designees and assignees, "**Circle Orange**") in its capacity as debtor-in-possession financing lender (in such capacity collectively with its designees and assignees, the "**DIP Lender**") pursuant to the terms and conditions of that certain "Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement," dated as of October 27, 2017, by and among the Debtors and the DIP Lender, attached hereto as **Exhibit A** (as amended, supplemented, restated or otherwise modified from time to time, the "**DIP Credit Agreement**," and together with the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be requested by the DIP Lender (collectively, as the same

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: S3 Digital Corp. (9650) and Circle Media, Inc. (9123). S3 Digital Corp.'s headquarters is located at 20965 Corral Road, Omaha, Nebraska 68022.

may be amended, supplemented, restated, or otherwise modified from time to time, the "**DIP Loan Documents**"));[2]

(b)    authorizing the Debtors to execute the DIP Loan Documents, and to perform such other acts as may be necessary or desirable in connection therewith;

(c)    granting to the DIP Lender a first priority security interest in and liens (including priming liens) on all of the DIP Collateral (as defined herein), subject only to the Carve-Out (as defined herein), to secure the DIP Facility and all Obligations thereunder and under the DIP Loan Documents, the Interim Order, and the Final Order (as defined below), as applicable (collectively, the "**DIP Loan Obligations**");

(d)    granting allowed superpriority administrative expense claims to the DIP Lender;

(e)    authorizing and directing the Debtors to pay in full any and all outstanding and accrued amounts under the Prepetition Loan Documents (as defined herein);

(f)    authorizing the Debtors to use Cash Collateral (as defined below) (together with the DIP Facility, the "**Postpetition Financing Arrangement**");

(g)    authorizing the Debtors to grant adequate protection to Circle Orange in its capacity as prepetition lender (in such capacity, the "**Prepetition Lender**") under that certain Senior Secured Credit Agreement, as amended, supplemented or otherwise modified from time to time (the "**Prepetition Credit Agreement**"), dated as of October 13, 2017, among Circle Media and the Prepetition Lender (the Prepetition Credit Agreement, together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith, as each may be amended, supplemented, or otherwise modified from time to time, the "**Prepetition Loan Documents**"); and

(h)    scheduling a hearing (the "**Final Hearing**"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to consider entry of a final order (the "**Final Order**"), *inter alia*, approving and authorizing the Postpetition Financing Arrangement (including, without limitation, the advance of the financing pursuant to the Interim Order) on a final basis pursuant to the DIP Loan Documents;

and the interim hearing on the Motion (the "**Interim Hearing**") having been held on October 30, 2017; and the Final Hearing on the Motion having been held on November 15, 2017; and upon

---

[2]   Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Credit Agreement.

all of the pleadings filed with the Court and the evidence proffered or adduced and representations of counsel at the Interim Hearing and the Final Hearing; and the Court having heard and resolved or overruled any and all objections to the relief requested in the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and upon the record herein; and that good and sufficient notice of the Motion, the Interim Hearing, and the Final Hearing having been provided by the Debtors; and after due deliberation:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.     **Petition Date**.  On October 27, 2017 (the "**Petition Date**"), the Debtors each commenced a Chapter 11 case (collectively, the "**Chapter 11 Cases**") by filing a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Nebraska (the "**Court**").  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (the "**Committee**") has been appointed in these Chapter 11 Cases.

B.     **Jurisdiction and Venue**.  The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  The Court is a proper venue of these Chapter 11 Cases and the Motion under 28 U.S.C. §§ 1408 and 1409.

---

[3]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

C.      **Notice**.  Notice of the Motion, the Interim Order, the Interim Hearing, the

Final Order, and the Final Hearing were provided to: (i) the Office of the United States Trustee

for the District of Nebraska; (ii) the Office of the United States Attorney for the District of

Nebraska; (iii) the Internal Revenue Service; (iv) each Debtor's twenty largest unsecured

creditors; (v) counsel to the DIP Lender, and (vii) all other known parties asserting a lien against

the Debtors' assets, by email and/or overnight courier.   Notice of the Motion, the Interim

Hearing, and the Final Hearing were good and sufficient under the circumstances.

D.      **The Debtors' Acknowledgments and Stipulations**.   In requesting the

Postpetition Financing Arrangement, and in exchange for and as a material inducement to Circle

Orange (as the DIP Lender and the Prepetition Lender) to agree to provide the Postpetition

Financing Arrangement, each Debtor acknowledges, represents, stipulates, and agrees as follows:

(i)      Circle Media and the Prepetition Lender entered into that certain Prepetition
Credit Agreement pursuant to which the Debtors obtained secured financing from
the Prepetition Lender, in the aggregate original principal amount of $100,000,
which principal amount (exclusive of certain accrued and/or accruing amounts) is
outstanding as of the Petition Date.  For purposes of the Interim Order and this
Final Order, the term "**Prepetition Obligations**" shall mean the Obligations (as
such term is defined in the Prepetition Credit Agreement) owed to the Prepetition
Lender under the Prepetition Loan Documents;

(ii)     the Prepetition Obligations are secured by first priority liens granted to the
Prepetition Lender on all, or substantially all, of Circle Media's assets (including
"Cash Collateral," as defined below) as set forth on the Prepetition Loan
Documents, whether then owned or existing or thereafter acquired (the
"**Prepetition Liens**").   "Collateral" as defined in the Prepetition Credit
Agreement granted or pledged pursuant to any of the Prepetition Loan Documents
shall be collectively referred to as the "**Prepetition Collateral**";

(iii)    as of the Petition Date, (a) the approximate aggregate amount of principal owed
under the Prepetition Loan Documents is not less than a $100,000, which does not
include interest, fees, expenses and other amounts that are chargeable or
otherwise reimbursable under the Prepetition Loan Documents, (b) all of the
Prepetition Obligations are, or upon the occurrence of certain events will be,
unconditionally owing by Circle Media to the Prepetition Lender as set forth in
the Prepetition Loan Documents, and (c) the Prepetition Obligations are not

-4-

subject to any avoidance, reductions, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity;

(iv)     the Prepetition Liens constitute valid, binding, enforceable, and perfected liens with priority over any and all other liens and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity;

(v)      the Debtors have waived, discharged and released any right they may have to challenge the Prepetition Obligations and the Prepetition Liens on the Prepetition Collateral, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Lender with respect to the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral;

(vi)     all of the Debtors' cash, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined below);

(vii)    neither the DIP Lender nor the Prepetition Lender is a control person or insider of the Debtors by virtue of any of the actions taken by them in respect of or in connection with the Postpetition Financing Arrangement or the Prepetition Obligations;

(viii)   Except as otherwise set forth herein, until such time as all DIP Loan Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens provided to the DIP Lender by offering a subsequent or other lender, or any other third party or party-in-interest, a superior or *pari passu* lien or claim with respect to the DIP Collateral pursuant to section 364 of the Bankruptcy Code or otherwise;

(ix)     until such time as all DIP Loan Obligations are indefeasibly paid in full in cash, no Debtor shall in any way or at any time seek allowance of any administrative expense claim against any Debtor of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (upon the entry of this Final Order), 507(a), 507(b), 546(c), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP Superpriority Claims (as defined below) provided herein, except with respect to the Carve-Out; and

(x)      unless and until any and all amounts outstanding and otherwise owing under the Prepetition Loan Documents are paid in full, the Prepetition Lender is entitled,

-5-

pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date ("**Diminution**"), in exchange for (a) the incurrence of the DIP Loan Obligations, (b) the use of Cash Collateral, (c) the granting of the DIP Liens and the DIP Superpriority Claims, (d) the subordination of the Prepetition Obligations to the Carve-Out, and (e) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

E.      **Cash Collateral**.  For purposes of the Interim Order and this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Prepetition Lender has a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) in such Cash Collateral, and shall include, without limitation, all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property, insurance policies, or in or on which the Prepetition Lender has a lien or a replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter.

F.      **Adequate Protection**.  Unless and until any and all amounts outstanding and otherwise owing under the Prepetition Loan Documents are paid in full, the Prepetition Lender is entitled, pursuant to sections 361, 363(e), and 364(c)(2)-(3) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral, including the Cash Collateral, to the extent of any Diminution, resulting from (a) the use of Cash Collateral, (b) the subordination of the Prepetition Obligations to the Carve-Out, and (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

G.      **Purpose and Necessity of Financing**.  As provided for in the Motion and the *Declaration of Joseph Casey, Chief Executive Officer of Debtors, in Support of Chapter 11*

*Petitions and First-Day Motions* filed contemporaneously therewith, the Debtors required the financing under the DIP Facility (the "**DIP Loans**") (i) to maximize and preserve the value of their businesses pending the sale of substantially all of their assets (or any portion thereof), and to satisfy payroll obligations and other necessary working capital and general corporate purposes of the Debtors consistent with the terms set forth in the DIP Loan Documents and the Budget (as defined below); (ii) to repay in full any and all amounts outstanding and otherwise owing under the Prepetition Loan Documents; (iii) to pay fees and expenses related to the DIP Loan Documents, the Prepetition Loan Documents, and necessary and reasonable fees incurred in connection with these Chapter 11 Cases through the consummation of the Bankruptcy Sale; and (iv) for such other purposes as set forth in the DIP Loan Documents.  If the Debtors do not obtain authorization to borrow under the DIP Loan Documents on a final basis, the Debtors and their estates will suffer immediate and irreparable harm.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Lender superpriority claims, liens, and security interests pursuant to section 364 of the Bankruptcy Code.  After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the Postpetition Financing Arrangement, including, without limitation, the DIP Facility, represents the best financing available to the Debtors at this time.

H.    **Good and Sufficient Cause Shown**.  Good and sufficient cause has been

shown for entry of this Final Order.  The ability of the Debtors to obtain sufficient working

capital and liquidity under the DIP Loan Documents is vital to the Debtors' estates and creditors.

I.    **Sections 506(c) And 552(b) Waivers**.  In light of (i) the subordination of

the DIP Lender's liens and superpriority claims to the Carve-Out, and in exchange for and as a

material inducement to the DIP Lender to agree to provide the DIP Facility, and (ii) the

subordination of the Prepetition Lender's liens and superpriority claims to the Carve-Out, the

DIP Superpriority Claims, and the DIP Liens, and to permit the use of Cash Collateral for

payments made in accordance with the Budget and the terms of the Interim Order and this Final

Order, the DIP Lender and the Prepetition Lender are, upon then entry of this Final Order,

entitled to a waiver of (1) any "equities of the case" claims under section 552(b) of the

Bankruptcy Code and (2) the provisions of section 506(c) of the Bankruptcy Code.

J.    **Good Faith**.  The terms of the DIP Loan Documents are more favorable to

the Debtors than those available from alternative sources.  Based upon the record before the

Court, the DIP Loan Documents have been negotiated in good faith and at arms'-length with the

DIP Lender.  Any DIP Loans and other financial accommodations made to the Debtors by the

DIP Lender pursuant to the DIP Loan Documents and this Final Order shall be deemed to have

been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the

Bankruptcy Code, and the DIP Lender shall be entitled to all protections and benefits afforded

thereby.

K.    **Fair Consideration and Reasonably Equivalent Value**.  The Debtors

have received and will receive fair consideration and reasonable value in exchange for access to

the DIP Loans and all other financial accommodations provided under the DIP Loan Documents,

the Interim Order, and this Final Order.  The terms of the DIP Loan Documents are fair and

reasonable, reflect the Debtors' exercise of their prudent business judgment consistent with their

fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.    **Immediate Entry of Final Order**.    The Debtors have requested

immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).    This Court

concludes that entry of this Final Order is in the best interests of the Debtors' estates and

creditors as their implementation will, among other things, allow for access to the financing

necessary to sustain the continued operations of the Debtors and further enhance the Debtors'

prospects for a successful sale of substantially all of their assets.    Based upon the foregoing

findings, acknowledgements, and conclusions, and upon the record made before this Court at the

Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Disposition</u>.  The Motion is granted on a final basis on the terms set forth herein.

**<u>AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL</u>**

2.    <u>Authorization For DIP Financing and Use of Cash Collateral.</u>

(a)    The Debtors are hereby authorized, on a final basis, to immediately incur

the DIP Loan Obligations subject to the terms of the Interim Order and this Final Order, the

Budget, and the DIP Loan Documents, of up to an aggregate amount of $500,000, which amount

is inclusive of the amount the Debtors are required to pay under subparagraph 2(b) of the Interim

Order and this Final Order (the "**Final Commitment**").  Available financing and advances under

the DIP Loan Documents shall be made consistent with the terms set forth in the Budget and the

DIP Loan Documents, and provide for the payment and/or capitalization of interest, fees, and

expenses in accordance with the Interim Order, this Final Order, and the DIP Loan Documents,

and any other amounts required or allowed to be paid in accordance with the Interim Order and this Final Order, as applicable, but only as and to the extent authorized by the Budget and the DIP Loan Documents.  The Debtors are authorized to use Cash Collateral subject to and solely in accordance with the terms, conditions, and limitations set forth in the Interim Order, this Final Order, the Budget, and the DIP Loan Documents, without further approval by the Court.

(b)      Payment of Prepetition Senior Debt.  Upon the entry of the Interim Order, the Debtors were authorized and directed to pay, or to cause the DIP Lender to pay, in full any and all amounts outstanding and otherwise owing under the Prepetition Loan Documents in accordance with the Prepetition Loan Documents, the DIP Loan Documents, and the Interim Order within two (2) Business Days of the entry of the Interim Order.  The payment in full of any and all amounts outstanding and otherwise owing under the Prepetition Loan Documents as provided for in this subparagraph 2(b) is hereby approved and authorized on a final basis.

(c)      Budget.  The Debtors have delivered to the DIP Lender a budget that has been approved in accordance with the DIP Loan Documents, a copy of which is attached hereto as **Exhibit B** (the "**Budget**").   Funds borrowed under the DIP Loan Documents and DIP Collateral used under the Interim Order and this Final Order shall be used by the Debtors solely in accordance with the Interim Order, this Final Order, the Budget, and the DIP Loan Documents.   The consent of the DIP Lender to the Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral after the occurrence of an Event of Default.

(d)      The DIP Lender (i) may assume that the Debtors will comply with the Budget, (ii) shall have no duty to monitor such compliance, and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral or Prepetition Collateral) any unpaid expenses

-10-

incurred or authorized to be incurred pursuant to the Budget, except for the Carve-Out, as may be permitted in the Interim Order and this Final Order, as applicable.  All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents.

3.      Authority to Execute and Deliver Necessary Documents.

(a)      The Debtors are authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, including, without limitation, any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Lender in accordance with the DIP Loan Documents.

(b)      The Debtors are further authorized to perform all obligations and acts required of them under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein, and in the Interim Order and this Final Order, as applicable.   For the avoidance of doubt, the automatic stay imposed under section 362 of the Bankruptcy Code has been on an interim basis, and upon entry of this Final Order shall be on a final basis, modified to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents, the Interim Order, and this Final Order.

4.      Amendments, Consents, Waivers, and Modifications.   The Debtors, with the express prior written consent of the DIP Lender, may enter into any non-material amendments, consents, waivers or modifications to the DIP Loan Documents without the need for further notice and hearing or any order of this Court.   Material amendments, consents, waivers, and modifications of the DIP Loan Documents shall require (a) an order of this Court and (b) the express prior written consent of the DIP Lender with respect to the DIP Collateral, including any

enforcement of remedies in respect of, or collection from, the DIP Collateral; provided, that any

forbearance from, or waiver of, (x) a breach by any Debtor of a covenant, representation or any

other agreement or (y) a default or an Event of Default, in each case under the DIP Loan

Documents, shall not require an order of this Court but shall require the express written consent

of the DIP Lender.   Modifications or extensions of the Budget, if any, shall be made in

accordance with the DIP Loan Documents.

## DIP LIENS AND DIP SUPERPRIORITY CLAIMS

5.    Priority and Liens.

(a)    To secure the DIP Loan Obligations, upon entry of the Interim Order the

DIP Lender was granted on an interim basis, and upon entry of this Final Order is hereby granted

on a final basis, pursuant to sections 364(c)(2), 364(c)(3), and 364(d)(1), as applicable, valid,

enforceable, nonavoidable, and fully perfected liens (including priming liens) and security

interests (collectively, the "**DIP Liens**") in the Collateral (as that term is defined in the DIP

Credit Agreement), which, subject to the DIP Loan Documents, shall include, without limitation,

all of the property, assets or interests in property or assets of the Debtors, and all "property of the

estate" (within the meaning of the Bankruptcy Code) of the Debtors, of any kind or nature

whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired

or created, including, without limitation, all of the Debtors' now owned or hereafter acquired

right title, and interest in and to all cash, accounts, accounts receivable, software, inventory,

property, plant and equipment, real estate, leaseholds, rolling stock, vehicles, trailers, all

intercompany claims, all claims, and causes of action of the Debtors or their estates (including,

without limitation, all commercial tort claims of every kind and description) and any and all

proceeds therefrom, any and all proceeds arising from insurance policies, all intellectual property

-12-

(including software), and the equity interests of the Debtors, which for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of the Debtors that are secured pursuant to the Prepetition Loan Documents, and all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above (collectively, the "**DIP Collateral**"), subject only to the Carve-Out.   Notwithstanding the foregoing, the DIP Collateral shall not include any claims and causes of action under chapter 5 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**") or the proceeds thereof.

(b)      The DIP Liens, effective immediately upon the entry of the Interim Order, shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than the Carve-Out.

(c)      The DIP Liens and the Replacement Liens (as defined herein) shall not be subject to challenge and shall attach and become legal, valid, properly perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date upon entry of the Interim Order without any further action by the Debtors, the DIP Lender, or the Prepetition Lender, and without the necessity of execution by the Debtors or any person or third party, or the filing or recordation, of any financing statements, guaranty agreements, security agreements, pledge agreements, federal or state notices, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents or the taking of possession or control of any DIP Collateral or the taking of any other actions.  All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except the Prepetition Liens, the Replacement Liens, and

the Carve-Out.  The DIP Lender may file, record or present a certified copy of the Interim Order or this Final Order with any filing or recording office and, in such event, the subject filing or recording office is authorized and directed to accept, file or record such certified copy of the Interim Order or this Final Order in accordance with applicable law; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or Replacement Liens.

6.      DIP Superpriority Claims.    Upon entry of the Interim Order, all DIP Loan Obligations constituted on an interim basis, and upon entry of this Final Order shall on a final basis constitute, allowed superpriority administrative expense claims (the "**DIP Superpriority Claims**") pursuant to section 364 of the Bankruptcy Code in each of the Debtor's Chapter 11 Cases and in any successor case under the Bankruptcy Code (including any case or cases under Chapter 7 of the Bankruptcy Code, the "**Successor Cases**"), having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (upon the entry of this Final Order), 507(a), 507(b), 546(c), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors.  The DIP Superpriority Claims granted in this Paragraph 6 shall be subject and subordinate in priority of payment only to payment of the Carve-Out.  Except as set forth herein, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases

-14-

or in any Successor Cases.  The DIP Superpriority Claims shall be senior in all respects to any other superpriority claims granted in these Chapter 11 Cases or in any Successor Cases.

## ADEQUATE PROTECTION

7.    <u>Adequate Protection for Prepetition Lender</u>.  Upon entry of the Interim Order, the Prepetition Lender was granted on an interim basis the relief in subparagraphs 7(a) through 7(c) below (collectively as the "**Prepetition Adequate Protection Rights**") as adequate protection in respect of, and as consideration for, (a) the use of Cash Collateral, (b) the subordination of the Prepetition Obligations to the Carve-Out, (c) any other diminution in the value of the Prepetition Collateral, and (d) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that, notwithstanding anything to the contrary in the Interim Order, the Prepetition Adequate Protection Rights provided in subparagraphs 7(a) through 7(b) shall cease and otherwise terminate upon the entry of this Final Order, <u>provided</u> that any and all amounts outstanding and otherwise owing under the Prepetition Loan Documents must have been paid in full pursuant to subparagraph 2(b) of the Interim Order.

(a)    <u>Replacement Liens</u>.  To secure the Adequate Protection Claims (defined below), the Prepetition Lender was granted (effective and perfected upon the date of entry of the Interim Order and without the necessity of execution by the Debtors or any other person or third party of any mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) on an interim basis, valid, perfected, postpetition security interests in and liens (the "**Replacement Liens**") in all of the DIP Collateral; <u>provided</u>, <u>however</u>, that, notwithstanding anything to the contrary, the Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Loan Obligations on account thereof and (ii) the Carve-Out.

-15-

(b)      <u>Adequate Protection Superpriority Claims</u>.      As further adequate protection, the Prepetition Lender was granted on an interim basis, superpriority claims, for any Diminution, which claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of this Final Order), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "**Adequate Protection Claims**"); <u>provided</u>, <u>however</u>, that, notwithstanding anything to the contrary, the Adequate Protection Claims shall only be and remain subject and subordinate to (i) the DIP Superpriority Claims and (ii) the Carve-Out.

(c)      <u>Consent to Adequate Protection and Use of Cash Collateral</u>.  To the extent that the DIP Lender and/or the Prepetition Lender has consented to the use of Cash Collateral and the Budget, such consent (i) is conditioned upon the entry of the Interim Order and this Final Order, (ii) shall not be deemed to extend to any other replacement financing or debtor-in-possession financing other than the DIP Loans provided under the DIP Loan Documents, (iii) shall not be deemed a basis to deny or impair the Prepetition Lender's entitlement to the Prepetition Adequate Protection Rights, and (iv) shall be of no force and effect in the event that the Interim Order or this Final Order is vacated, modified, reversed, or altered in any respect or otherwise subject to appeal or other judicial review without the prior written consent of the DIP Lender, or if the DIP Loan Documents and DIP Loans as set forth herein and therein are not approved by the Court.

8.      Survival of DIP Liens, DIP Superpriority Claims, Replacement Liens and Adequate Protection Claims.  The DIP Liens, DIP Superpriority Claims, Replacement Liens, and Adequate Protection Claims, and other rights and remedies granted under the Interim Order and this Final Order to the DIP Lender or the Prepetition Lender, shall, subject to paragraph 7 hereof, continue in this and any Successor Cases and shall be valid and enforceable against any trustee appointed in any Debtor's Chapter 11 Case or its Successor Cases and/or upon the dismissal of the Debtors' Chapter 11 Cases or any Successor Cases and such liens and security interests shall maintain their first priority as provided in the Interim Order and this Final Order, as applicable, until all the DIP Loan Obligations have been indefeasibly paid in full in cash and the DIP Lender's commitments have been terminated in accordance with the DIP Loan Documents.

## CARVE-OUT; RESTRICTIONS ON USE OF FUNDS

9.      Carve-Out.

(a)      All of the DIP Liens, the DIP Superpriority Claims, the Replacement Liens, the Adequate Protection Claims, the Prepetition Liens, and any other liens, claims, or interest of any person, shall be subject and subordinate to the Carve-Out.  "Carve-Out" shall mean the sum of: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "**Case Administration Fees**"); (ii) unpaid, reasonable professional fees and expenses ("**Professional Fees**") payable to each professional retained by the Debtors (the "**Debtor Professionals**") and the Committee, if any (collectively with the Debtor Professionals, the "**Estate Professionals**") that are incurred or accrued prior to the date of the occurrence of an Event of Default, but subject to the aggregate amount(s) allocated to each such professional in the Budget and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever

-17-

such fees may be actually incurred prior to the date of termination as provided herein); and (iii)

Case Administration Fees and Professional Fees paid on or after the date of the DIP Lender's

written notice to the Debtors of the occurrence of an Event of Default and the termination of the

DIP Facility (the "**Carve-Out Trigger Date**") in an aggregate amount not to exceed $25,000

(collectively, the "**Carve-Out**"); provided, however, that the DIP Lender shall not be obligated

to fund any amounts (individually or in the aggregate) under the DIP Loan Documents, the

Interim Order, or this Final Order in excess of the Final Commitment.  Upon the occurrence of

the Carve-Out Trigger Date, the payment of allowed Professional Fees incurred by each Estate

Professional (excluding any incurred and unpaid professional fees and expenses of the DIP

Lender payable pursuant to the Interim Order or this Final Order, as applicable) in an aggregate

amount not in excess of the amounts set forth for each such professional in the Budget, shall

permanently reduce the Carve-Out on a dollar-for-dollar basis.  The DIP Lender's obligations to

fund or permit the use of its Cash Collateral to fund or to otherwise pay the Carve-Out shall be

added to and made part of the DIP Loan Obligations and secured by the DIP Collateral and

otherwise entitled to the protections granted under the Interim Order, this Final Order, the DIP

Loan Documents, the Bankruptcy Code and applicable law, as applicable.

      10.    <u>Restrictions on Use of Funds</u>.

      (a)    Notwithstanding anything to the contrary herein, no proceeds of the

Postpetition Financing Arrangement, any DIP Collateral or Prepetition Collateral (including,

without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay, any

claims for services rendered by any of the professionals retained by the Debtors, any creditor or

party in interest, any committee, any trustee or examiner appointed in these Chapter 11 Cases or

any Successor Cases, or any other party to (i) request authorization to obtain postpetition loans or

-18-

other financial accommodations pursuant to section 364 of the Bankruptcy Code, or otherwise, other than from the DIP Lender in accordance with the DIP Loan Documents, or (ii) seek the approval of, or otherwise pursue, any Alternative Transaction.  The Debtors shall not make any payments on account of any (i) creditor's prepetition claims, (ii) claims or expenses arising under section 503(b)(9) of the Bankruptcy Code, (iii) management incentive plan, or (iv) claims or expenses arising under section 503 of the Bankruptcy Code, except, in each case, in amounts and on terms and conditions that (A) are approved by order of the Court and (B) are expressly permitted by the terms of the DIP Credit Agreement and the Budget.

(b)    Any challenge or other action with respect to the Debtors' Stipulations (as defined herein) brought by the Debtors or any of their non-debtor affiliates, without the express prior written consent of the DIP Lender, shall be considered an Event of Default under the DIP Credit Agreement and this Final Order.

11.    Proceeds of Subsequent Financing or Sale.  If at any time prior to the repayment in full of all DIP Loan Obligations, any Debtor, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt under section 364 of the Bankruptcy Code or otherwise in violation of the terms of the Interim Order or the Final Order, as applicable, or shall receive proceeds from a sale or other transfer pursuant to section 363(b) of the Bankruptcy Code, or from a sale or transfer of any DIP Collateral or Prepetition Collateral, after the satisfaction of liens that are senior to those of the DIP Lender, all of the proceeds derived from such credit, debt, sale, or transfer shall immediately be turned over to the DIP Lender up to an amount equal to the sum of all amounts outstanding under the DIP Loan Documents.

12.     <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.  The

Debtors' acknowledgements and stipulations set forth in Paragraph D (collectively, the

"**Debtors' Stipulations**") above (i) were binding upon the Debtors, their estates, and any agents,

successors, or representatives of the foregoing (including, without limitation, any trustee

appointed in these Chapter 11 Cases or any Successor Cases) in all circumstances upon entry of

the Interim Order, and (ii) shall hereby bind all other parties in interest (including, without

limitation, the Committee, if any) upon entry of this Final Order.

13.     <u>Prohibition on Granting of Additional Liens and Interests</u>.  Upon entry of this

Final Order and subject to the prior written consent of the DIP Lender, no liens, claims, interests

or priority status having a lien or priority superior to or *pari passu* with that of the DIP Liens, the

DIP Superpriority Claims, the Adequate Protection Claims, or the Replacement Liens granted by

the Interim Order and this Final Order, other than (i) the Carve-Out, (ii) Adequate Protection

Claims, (iii) the Replacement Liens, and (iv) except as otherwise set forth herein, as applicable,

shall be granted to any party while any portion of the DIP Loan Obligations or Prepetition

Obligations remain outstanding, or any commitment under the DIP Loan Documents or

Prepetition Loan Documents remains in effect.

14.     <u>Release</u>.     The release, discharge, waivers, settlements, compromises, and

agreements set forth in this Paragraph 14 were deemed effective on an interim basis upon entry

of the Interim Order and shall be deemed effective on a final basis upon entry of this Final Order.

The Debtors forever and irrevocably (i) release, discharge, and acquit the DIP Lender and the

Prepetition Lender, and each of their respective former, current or future officers, employees,

directors, agents, representatives, owners, members, partners, financial advisors, legal advisors,

shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in

interest (collectively, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the DIP Lender or the Prepetition Lender, as the case may be, and the Debtors and the Debtors' affiliates including any equitable subordination claims or defenses, with respect to or relating to the DIP Loan Obligations, the DIP Liens, the DIP Loan Documents, Prepetition Obligations, the Prepetition Liens, the Prepetition Loan Documents, and the Debtors' attempt to sell their assets (or any portion thereof), any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the DIP Lender and the Prepetition Lender; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the DIP Liens, the DIP Loan Obligations, the Prepetition Obligations, and the Prepetition Liens.

### TERMINATION; REMEDIES; MODIFICATION OF AUTOMATIC STAY

15.   <u>Termination</u>.  Upon the termination of the DIP Facility following the occurrence of an "Event of Default" as that term is defined in the DIP Credit Agreement, the Commitment Termination Date (as defined in the DIP Credit Agreement), or default by any Debtor with respect to any of its obligations under the Interim Order, this Final Order, or any other DIP Loan Document (collectively, an "**Event of Default**"), unless waived in writing by the DIP Lender in accordance with the DIP Loan Documents, (a) the Debtors' authority to use Cash Collateral shall immediately and automatically terminate; (b) the DIP Loan Obligations shall be immediately due and payable; (c) the Commitment Termination Date shall be deemed to have occurred; and (d)

subject to Paragraph 16, section 362 of the Bankruptcy Code and any other applicable section of the Bankruptcy Code is automatically altered, lifted, and modified to the extent necessary to permit Circle Orange (in its capacity as DIP Lender and Prepetition Lender) to, at its election and in its sole discretion, take immediate reasonable action to protect the DIP Collateral and Prepetition Collateral from harm, theft and/or dissipation.

16.     Remedies and Stay Modification.

(a)     Subject to subparagraphs 16(c) and 16(d) below, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the DIP Lender or Prepetition Lender, as applicable, upon the occurrence of an Event of Default, and without any interference from the Debtors or any other party interest but subject to five (5) business days' prior written notice (which may be delivered by electronic mail) (the "**Remedies Notice Period**") to the Debtors, their counsel, counsel to the Committee (if any), and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, the Interim Order, this Final Order, the Prepetition Loan Documents or under other applicable bankruptcy and non-bankruptcy law including, without limitation, to (i) take any actions reasonably calculated to preserve or safeguard the DIP Collateral and/or the Prepetition Collateral or to prepare the DIP Collateral and/or the Prepetition Collateral for sale; (ii) foreclose or otherwise enforce the DIP Liens, the Prepetition Liens and the Replacement Liens on any or all of the DIP Collateral and/or the Prepetition Collateral; and (iii) exercise any other default-related rights and remedies under the DIP Loan Documents, the Interim Order, or this Final Order.

(b)     The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in

the event that the Debtors, the Committee (if any), and/or the U.S. Trustee has not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.  The Debtors, the Committee (if any), and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay under section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief.

(c)    If either the DIP Lender or Prepetition Lender is entitled, and has elected in accordance with the provisions hereof, to enforce its respective liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors (or any trustee appointed under Chapter 11 or Chapter 7) shall cooperate with the DIP Lender or Prepetition Lender, as applicable, in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Lender or Prepetition Lender, as applicable, (including any collateral liquidator or consultant); (ii) providing the DIP Lender, Prepetition Lender, and their respective representatives or agents, as applicable, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Lender, Prepetition Lender, or their respective representatives; and (iii) taking reasonable steps to safeguard and protect the DIP Collateral or Prepetition Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Lender's or Prepetition Lender's enforcement efforts.

(d)    Upon the occurrence and during the continuance of an Event of Default, (i) the DIP Lender shall not have any further obligation to provide financing under the DIP Loan Documents or to permit the continued use of Cash Collateral and (ii) the DIP Lender, subject to and in accordance with the DIP Loan Documents, is authorized to declare all or any portion of

-23-

(x) the unpaid principal amount of and accrued interest on the DIP Loans, and (y) any and all other DIP Loan Obligations, to be, and same shall forthwith become, immediately due and payable, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by the Debtors, and the obligation of the DIP Lender to make any DIP Loan shall thereupon terminate.  For the avoidance of doubt, this subparagraph 16(d) shall not be subject to the Remedies Notice Period.

(e)     Neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be used to prohibit the exercise, enjoyment and enforcement of any rights, benefits, privileges and remedies set forth in Paragraph 16.

## **MISCELLANEOUS**

17.     <u>Limitation on Section 506(c) Claims</u>.   Upon the entry of this Final Order, provided that the DIP Lender has funded or authorized sufficient use of Cash Collateral to fund the Carve-Out, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any Successor Cases at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the DIP Lender, Prepetition Lender, or any of their respective claims, the Carve-Out, the DIP Collateral or the Prepetition Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender or Prepetition Lender, as applicable.  No action, inaction or acquiescence by the DIP Lender or Prepetition Lender shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Lender or Prepetition Lender, as applicable, or any of their respective claims, the Carve-Out, the DIP Collateral or the Prepetition Collateral.

18.    <u>Financial Reporting and Cooperation with Financial Advisor</u>.  The Debtors shall provide the DIP Lender with ongoing financial reporting and disclosures as reasonably requested by the DIP Lender in accordance with the DIP Loan Documents.

19.    <u>Right to Credit Bid</u>.  Upon the entry of the Interim Order, and except as otherwise agreed by Circle Orange (as DIP Lender, Prepetition Lender, and in any other capacity), Circle Orange (as DIP Lender, Prepetition Lender, and in any other capacity) had the right on an interim basis, and upon entry of this Final Order shall have the right on a final basis, to "credit bid" its claims up to the full amount of (x) the Prepetition Obligations and (y) the DIP Loan Obligations, including fees and expenses in connection with the foregoing, during any sale of all or any portion of the DIP Collateral or Prepetition Collateral, as applicable, including, without limitation, any sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any plan subject to confirmation under section 1129 of the Bankruptcy Code, and any bid submitted by Circle Orange (as DIP Lender, Prepetition Lender, or in any other capacity) shall be deemed a "qualified bid" under any order approving bidding procedures.  Circle Orange (as DIP Lender, Prepetition Lender, or in any other capacity) shall have the absolute right to assign, sell, or otherwise dispose of its rights to credit bid in connection with any credit bid in any of its capacities (including, without limitation, as DIP Lender or Prepetition Lender, as applicable) or any acquisition entity or joint venture formed in connection with such bid.

20.    <u>Injunction</u>.  Upon the entry of this Final Order, and except as provided in the DIP Loan Documents, the Interim Order, or this Final Order, as applicable, the Debtors shall be enjoined and prohibited from, at any time during these Chapter 11 Cases, granting liens on the DIP Collateral, the Prepetition Collateral or any portion thereof to any other parties, pursuant to section 364 of the Bankruptcy Code or otherwise, which liens are senior to or *pari passu* with the

-25-

liens granted to the DIP Lenders or the Prepetition Lender, except in accordance with the DIP

Loan Documents, the Prepetition Loan Documents, Interim Order, and this Final Order.

21.    <u>Capitalization of DIP Lender's Fees and Expenses</u>.

(a)    All reasonable out-of-pocket costs and expenses of the DIP Lender

including, without limitation, reasonable legal, accounting, collateral examination, financial

advisory, monitoring, and appraisal fees and disbursements, fees and expenses of other

consultants, indemnification and reimbursement obligations with respect to fees and expenses,

and other out of pocket expenses, whether or not contained in the Budget, and without limitation

to the dollar estimates contained in the Budget, shall be capitalized and treated as "Obligations"

under the Prepetition Loan Documents and the DIP Loan Documents, as applicable.  Any and all

such costs and expenses shall, subject to subparagraph 21(c) below, be deemed to be allowed

without further order of this Court.  The DIP Lender shall not be required to file any fee or

retention application or otherwise comply with the U.S. Trustee fee guidelines with respect to

any fees and expenses incurred in connection with the Interim Order, this Final Order, the

Prepetition Loan Documents, the DIP Loan Documents, or the Debtors.

(b)    <u>DIP Loan Documentation and Related Expenses</u>. Any and all reasonable

fees and expenses (including, without limitation, legal and financial advisory fees and

disbursements) incurred by the Prepetition Lender or DIP Lender, as the case may be, in

connection with (i) negotiating, formulating, drafting, and otherwise documenting the Interim

Order, this Final Order, any of the DIP Loan Documents, the Prepetition Loan Documents,

alternative financings, and any matters related to the foregoing and (ii) the commencement of the

Chapter 11 Cases (including matters and amounts relating to any "first day" filings or related

relief) including prepetition financing, other financing issues (including, without limitation, the

documentation of the DIP Facility and the Prepetition Loan Documents), and contingency preparations, shall capitalized and treated as "Obligations" under the Prepetition Loan Documents and the DIP Loan Documents, as applicable. Any and all such costs and expenses shall, subject to subparagraph 21(c) below, be deemed to be allowed without further order of this Court.

(c)    <u>Reasonableness of Fees and Expenses</u>.  Upon receipt of any invoices for the DIP Lender's or Prepetition Lender's fees and expenses, the Debtors shall promptly provide a copy of any such invoice(s) to the U.S. Trustee.  If the U.S. Trustee objects to the reasonableness of the invoices submitted by the DIP Lender or Prepetition Lender, as applicable, and the parties cannot resolve such objection within ten (10) calendar days of the U.S. Trustee's receipt of such invoices, the U.S. Trustee shall file with the Court and serve on the DIP Lender or Prepetition Lender, as applicable, a written objection (a "<u>Fee Objection</u>") limited to the issue of reasonableness of any such fees and expenses.  If a Fee Objection is timely filed, the Court shall have jurisdiction to determine only the reasonableness of the disputed portion of such invoice(s).

22.    <u>No Marshalling</u>.  Upon the entry of this Final Order, the DIP Collateral, Prepetition Collateral, DIP Lender, and Prepetition Lender shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine.  Without limiting the generality of the immediately preceding sentence, no party other than the DIP Lender and/or the Prepetition Lender shall be entitled, directly or indirectly, to direct exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default.

23.    <u>Equities of the Case Waiver</u>.  Upon the entry of this Final Order, the DIP Lender and Prepetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the DIP Lender or Prepetition Lender with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral.

24.    <u>Access to Books and Records</u>.  The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to their business and activities and (b) cooperate, consult with, and provide to the DIP Lender all such information as required or allowed under the DIP Loan Documents, the provisions of the Interim Order or this Final Order, as applicable, or that is afforded to the Committee (if any), and/or the Committee's respective legal or financial advisors.

25.    <u>DIP Lender is Not a Responsible Person</u>.  Upon the entry of this Final Order, in (a) making the decision to make the DIP Loans or consenting to the use of Cash Collateral; (b) administering the DIP Loans; (c) extending other financial accommodations to the Debtors under the DIP Loan Documents, the Interim Order, and this Final Order; (d) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents; (e) administering the loans and financial accommodations extended under the Prepetition Loan Documents; (f) extending other financial accommodations to the Debtors under the Prepetition Loan Documents; (g) taking any action in connection with the sale of the Debtors' assets (or any portion thereof); and (h) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lender (acting in any capacity) shall not be considered to be, or to have been,

exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law.

26.    <u>Successors and Assigns</u>.   The DIP Loan Documents and the provisions of the Interim Order and this Final Order shall be binding upon the Debtors, the DIP Lender, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Lender, and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a Debtor's case under any Chapter of the Bankruptcy Code.   The terms and provisions of the Interim Order and this Final Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed under Chapter 7 or Chapter 11 of the Bankruptcy Code.

27.    <u>Binding Nature of Agreement</u>.   The DIP Loan Documents to which the Debtors are parties shall constitute legal, valid, and binding joint and several obligations of any Debtor party thereto, enforceable in accordance with its terms.   The DIP Loan Documents have been or will be properly executed and delivered to the DIP Lender by the Debtors party thereto.   Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens, and priorities of the DIP Lender provided for in the Interim Order, this Final Order, the DIP Loan Documents, or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the DIP Loan Obligations have first been

indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents.

28.     <u>Subsequent Reversal or Modification</u>.   This Final Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections and benefits afforded by section 364(e) of the Bankruptcy Code.   Any financial accommodations made to the Debtors by the DIP Lender pursuant to this Final Order and the DIP Loan Documents shall be deemed to have been made by the DIP Lender in good faith, as such term is used in section 364(e) of the Bankruptcy Code.   If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Lender, prior to the date of receipt by the DIP Lender of written notice of the effective date of such action or (b) the validity and enforceability of any lien or priority authorized or created under the Interim Order, this Final Order, or pursuant to the DIP Loan Documents.   Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by a Debtor to the DIP Lender prior to written notice to the DIP Lender of the effective date of such action, shall be governed in all respects by the original provisions of the Interim Order and this Final Order, as applicable, and the DIP Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

29.     <u>No Waiver</u>.   This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender may have to bring or be heard on any matter brought before this Court.

30.     <u>Budget Modifications and Extension Periods</u>.   Subject to the occurrence of an Event of Default, the Postpetition Financing Arrangement shall be in effect and the Budget annexed to this Final Order shall constitute the Budget for the period set forth therein.

31.     <u>Limits on Liability</u>.   Nothing in this Final Order or in any of the DIP Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or the Prepetition Lender any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their efforts to conduct an asset sale or otherwise restructure or wind down.

32.     <u>Priority of Terms</u>.   To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this Final Order shall govern.

33.     <u>No Third Party Beneficiary</u>.   Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

34.     <u>Survival</u>.   Except as otherwise provided herein, (a) the protections afforded under the Interim Order and this Final Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting these Chapter 11 Cases into a case(s) pursuant to Chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the DIP Superpriority Claims and the Adequate Protection Claims shall

continue in these Chapter 11 Cases, in any such Successor Cases, or after any such dismissal.

Except as otherwise provided herein, the DIP Liens, the Replacement Liens, the DIP

Superpriority Claims and the Adequate Protection Claims shall maintain their priorities as

provided in the Interim Order, this Final Order, and the DIP Loan Documents, and not be

modified, altered or impaired in any way by any other financing, extension of credit, incurrence

of indebtedness (except with respect to any additional financing to be provided by the DIP

Lender in accordance with the Interim Order and this Final Order, as applicable), or any

conversion of any of these Chapter 11 Cases into a case(s) pursuant to Chapter 7 of the

Bankruptcy Code or dismissal of these Chapter 11 Cases, or by any other act or omission until (i)

all DIP Loan Obligations are indefeasibly paid in full in cash and completely satisfied, and the

commitments under the DIP Loan Documents are terminated in accordance therewith, and (ii)

the Prepetition Obligations have been or are deemed to have been satisfied in accordance with

the Bankruptcy Code.

35.     <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Final Order

are in addition to and without prejudice to the rights of the DIP Lender or the Prepetition Lender

to pursue any and all rights and remedies under the Bankruptcy Code, the Prepetition Loan

Documents and DIP Loan Documents or any other applicable agreement or law, including,

without limitation, rights to object to any sale of assets, and to object to applications for

allowance and/or payment of compensation of professionals or other parties seeking

compensation or reimbursement from the Debtors' estates.

36.     <u>Joint and Several Liability</u>.  The Debtors shall be jointly and severally liable for

any and all obligations hereunder and in connection with the Interim Order, this Final Order, and

the DIP Loan Documents.

37.    <u>Immediate Binding Effect; Entry of Final Order</u>.  This Final Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Final Order on the Court's docket in these Chapter 11 Cases.

38.    <u>Proofs of Claim</u>.  The DIP Lender and the Prepetition Lender shall not be required to file proofs of claim in the Chapter 11 Cases or Successor Cases for any claim under the Interim Order or this Final Order, as applicable.   Upon the entry of the Interim Order, the Debtors' Stipulations were deemed to constitute a timely filed proof of claim for the Prepetition Lender, and the Prepetition Lender shall be treated under section 502(a) of the Bankruptcy Code as if it had filed a proof of claim for all such amounts as well as any another other contingent or unliquidated claims or amounts that the Prepetition Lender might have against the Debtors. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in these Chapter 11 Cases or Successor Cases to the contrary, the Prepetition Lender, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in these Chapter 11 Cases or any Successor Cases for any claim allowed herein on behalf of such Prepetition Lender. For the avoidance of doubt, any and all claims of Circle Orange arising out of or in connection with the Prepetition Loan Documents, the DIP Loan Documents, the Interim Order, and/or this Final Order shall be deemed to be allowed claims in these Chapter 11 Cases and any Successor Case without further order of this Court.

39.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Final Order.

Dated:   November 16, 2017
        Omaha, Nebraska

                                    s/ Thomas L. Saladino
                                    HONORABLE THOMAS L. SALADINO
                                    UNITED STATES BANKRUPTCY JUDGE

## **Exhibit A**

(Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement)

## **Exhibit B**

(Budget)